IN THE
TENTH COURT OF APPEALS
 

No. 10-00-172-CR

     BOBBY HAILEY,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 13th District Court
Navarro County, Texas
Trial Court # 27,291
                                                                                                                
                                                                                                         
DISSENTING OPINION
                                                                                                                

      Why are we reversing this case on a theory never argued by any party at any time? 
      I do not know.
      The only issue ever argued to the trial court regarding the suppression of the blood test results
was that the blood was obtained in violation of the constitutional prohibition of unreasonable
searches and seizures. The majority rightfully acknowledges that because the blood was taken
without the intervention of a state actor, the constitutional prohibition is not violated but then
moves on to decide a question not presented to us of whether Hailey was assaulted by the manner
in which the blood was obtained by the hospital. The majority then disregards the trial court’s
determination of the facts, looks to the evidence and makes their own credibility evaluation, and
then determines that the hospital committed a criminal and civil assault on Hailey.
      The party bringing the motion to suppress bears the burden of establishing all of the elements
of a Fourth Amendment claim. State v. Mercado, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998). 
Once a defendant has established the basis for a Fourth Amendment claim, the burden shifts to the
prosecution to establish the validity of the search under the applicable theory of law. Id. The
prosecution met its burden. Must the State now prove that the entity from which it obtains
evidence by subpoena obtained it lawfully to withstand a motion to suppress? Hailey only
challenged the way the State obtained the blood test. The evidence established there was no State
action. The blood test was obtained by a subpoena issued for the hospital records. He never
argued he was assaulted by the hospital. Hailey repeatedly asserts in his brief that he did not
consent to having the hospital draw blood. But, he does not direct this Court to any evidence in
the record which supports that assertion. Further, he does not attack the trial court’s
determination that under the circumstances it was reasonable for the hospital to obtain and test a
blood sample. The Court of Criminal Appeals “h[as] not afforded the courts of appeals latitude
to reverse a trial court’s decision on new theories of law not previously presented to that court for
its consideration.” Id. at 77.
      Before the suppression hearing was held, the trial court, and the jury, had already heard
considerable testimony of just how intoxicated Hailey appeared to be when his car left the roadway
and became stuck in the mud. The driver of a car traveling in the opposite direction testified
Hailey’s car bounced twice off the guardrail on the right side of the roadway before careening
across the oncoming lane of traffic, narrowly missing a head-on collision with the witness’s car
containing the witness, his wife and four children. Hailey’s car continued across the oncoming
lane of traffic and left the roadway on the wrong side, and went down an embankment about
twenty feet to a creek where the car became stuck in the mud. He then attempted to re-start the
car so he could leave. Hailey was unable to stand and smelled strongly of an alcoholic beverage. 
      Both officers who arrived at the scene also testified that Hailey smelled strongly of an
alcoholic beverage and could not stand without assistance. Additionally, one of the officers
testified that the defendant was so intoxicated that when Hailey initially stood and attempted to
face the officer upon the officer’s arrival at the scene, Hailey fell over backwards into the mud. 
The officer also testified that Hailey failed one field sobriety test and was so intoxicated that the
officer felt it was not safe for Hailey to even attempt two other standard field sobriety tests, the
one-leg-stand test and the walk-and-turn test. The officer also testified that it was his decision to
transport Hailey to the hospital “for observation because of his extreme intoxication” because he
was concerned about alcohol poisoning. The other officer testified that in route to the hospital
Hailey was slipping into and out of consciousness and had to continually be awakened for fear
Hailey may have been getting alcohol poisoning. 
      The only witnesses called at the suppression hearing were the two officers. At the suppression
hearing one officer testified that Hailey was administered a test with a portable breathalyser at the
scene. The result was 337, indicating more than three times the legal limit. He further testified
that he was concerned about alcohol poisoning and instructed another officer to take Hailey to the
hospital for evaluation. The hospital blood test indicated a blood alcohol concentration of 454.24.


 
A level of 400 is usually fatal.
      At the conclusion of the suppression hearing the Court made the following findings:
The blood test was not taken as a result of the directive of any law enforcement
officer. Based on the testimony of officers it appeared that this defendant was extremely
intoxicated and periodically comatose.
 
Also the court will find that there was a significant question with regard to the
physical safety of the defendant. The portable breath test showed an extremely high level
of the alcohol which is consistent with an extremely high level shown by the test
conducted by the hospital.
 
The Court finds that it was reasonable for the hospital to obtain a blood sample and
for testing based on the existing circumstances. 

The trial court then ruled that the documentary evidence regarding the blood test was admissible. 
The trial court’s findings are amply supported by the record. 
      The majority has determined that Hailey was assaulted by the hospital when the hospital took
a blood sample. This question has never been argued by anyone to either the trial court or this
court. Further, no witness, including Hailey, testified whether or not Hailey refused to allow the
hospital to draw and test a blood sample. 
      Upon independent evaluation of the entire record and applicable law, I would not decide this
case on an issue never argued to any court. Additionally, upon a review of the evidence, I would
hold that the trial court’s factual determinations are fully supported by the evidence and the trial
court did not abuse its discretion in admitting the hospital report into evidence. Finally, after an
examination of the entire record, and in particular because the other evidence of guilt is so
overwhelming, I have no difficulty in reaching a determination with “fair assurance that the error
did not influence the jury, or had but a slight effect.” Accordingly, I would hold that error, if
any, was harmless.
      Because the majority holds otherwise, I respectfully dissent.
 
                                                                   TOM GRAY
Dissenting opinion issued and filed June 20, 2001
Publish